# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

### CIVIL CASE NO. 1:10cv65

| | |
|---|---|
| AMERICAL CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| INTERNATIONAL LEGWEAR GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on the Defendant International Legwear Group, Inc.'s Motion to Dismiss Americal's Complaint for Lack of Subject Matter Jurisdiction [Doc. 5].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, United States Magistrate Judge Dennis L. Howell was designated to consider the motion and to submit recommendations for its disposition. On May 14, 2010, the Magistrate Judge filed a Memorandum and Recommendation in which he recommended denying the motion to dismiss. [Doc. 13]. The Defendant timely filed objections. [Doc. 14].

## PROCEDURAL HISTORY

The Plaintiff Americal Corporation (Americal) brought this declaratory judgment action pursuant to 28 U.S.C. §2201(a) seeking a declaration of the parties' obligations in connection with a June 2004 Trademark License Agreement. [Doc. 1, at 1]. Jurisdiction was invoked pursuant to 28 U.S.C. §1331 because the case allegedly involves federal trademark law.[1] [Id., at 2]. Jurisdiction was not based on diversity of citizenship since it is alleged in the Complaint that the Plaintiff is a North Carolina corporation and the Defendant, although a Virginia corporation, has its principal place of business in North Carolina. [Id., at 1]; 28 U.S.C. §1332(c)(1).

Prior to 2004, Americal had been the owner of the federally registered trademarks for Peds® and MediPeds® hosiery products. [Id.]. After filing a Chapter 11 reorganization in April 2004, Americal's assets, including the registered trademarks, were sold at auction to the highest bidder, Defendant International Legwear Group, Inc. (ILG). [Id., at 2-3]. ILG's bid included a provision pursuant to which ILG as the new owner of the marks would grant a trademark license to Americal which would continue to source the

---

[1] [T]he Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts; it is 'procedural only.'" Vaden v. Discover Bank, 129 S.Ct. 1262, 1278, 173 L.Ed.2d 206 (2009); Volvo Const. Equipment North America, Inc. v. CLM Equipment Company, Inc., 386 F.3d 581, 592 (4th Cir. 2004) (in a declaratory judgment action, the court must possess an independent basis for jurisdiction; *i.e.*, federal question or diversity jurisdiction).

2

manufacturing of and to market and sell the MediPeds® products and a subgroup thereof called TheraPeds. [Id., at 3]. The license provided that no royalties were due to ILG from 2004 through December 31,2008; royalties of one percent were imposed from January 1, 2009 through December 31, 2013 (the first renewal period of the license) and royalties of three percent from January 1, 2014 through December 31, 2018 (the second renewal period). [Id., at 3]. The license agreement further provided that Americal must maintain $1 million in sales each year during the term in order to be qualified to renew the license agreement. [Id.]. After receiving approval from the Bankruptcy Court, ILG and Americal entered into a license agreement for the TheraPeds and MediPeds® trademarks. [Id., at 4].

Included in the license agreement was a provision that ILG could manufacture the MediPeds® products "so long as ILG was able and willing to supply Americal with MediPeds® products that met Americal's specifications, volume, delivery and timing requirements and at a price at or below the price charged Americal by its suppliers." [Id., at 4]. Americal alleges that between 2004 and early 2008, ILG declined to provide any MediPeds® products while concentrating solely on its own production of Peds® products. [Id., at 5]. In early 2008, ILG informed Americal that it desired to begin production of MediPeds® products and asked for product information. [Id.]. In response,

3

Americal sent design request forms which included information about the amounts it paid its suppliers for six styles of MediPeds®. [Id.]. In February 2008, Americal sent ILG a list of twenty-one products along with their annual volume requirements and pricing for those products so that ILG could produce samples of those products for Americal's review. [Id.]. ILG admitted that it had been unable to produce those samples of sufficient quality. [Id., at 6]. Americal alleges that ILG never provided it with a single sample of any MediPeds® product. [Id., at 8].

Americal nonetheless continued with its sales of MediPeds® products using other suppliers and increased its gross sales from $1.5 million in 2004 to $6 million in 2009. [Id., at 7]. During that same time period, ILG produced the Peds® products, but its sales declined from $30 million in 2004 to $10 million in 2009. [Id.].

In March 2009, ILG gave written notice to Americal of what it asserted to be material breaches of the license agreement. [Id.]. ILG claimed that Americal had new styles and colors of products which had not been approved by ILG and it demanded "that Americal immediately cease all distribution, advertisements, use, production or selling of the ... products under any of the Licensed Marks[.]" [Doc. 1-2, at 2]. ILG also claimed that Americal was making unsupported product claims which "have jeopardized the goodwill and

4

value of the Licensed Marks." [Id., at 3]. The letter concluded with the admonition, "ILG does not intend currently to commence any enforcement action, but wants to engage promptly with Americal to discuss the matters set forth in this letter." [Id., at 4].

For the next year, the parties exchanged letters in an attempt to resolve the dispute between them but on March 2, 2010, ILG gave written notice of its termination of the license agreement, stating "ILG deems Americal to be in default for its material breach of the License Agreement. ILG further confirms that this default is not curable and hereby terminates the License Agreement[.]" [Doc. 1, at 10; Doc. 1-5]. Once again, the letter concluded with the admonition that "ILG does not intend currently to commence any enforcement action, pending Americal's compliance with the License Agreement and the terms of this letter." [Id.]. Americal claims that after this letter was sent, ILG refused to approve any new packaging and marketing for MediPeds®. Americal argues that this was an attempt by ILG to inhibit Americal's sales and to force Americal to violate the terms of the agreement by proceeding with unapproved packaging and marketing. [Id.].

In this Complaint, filed on March 18, 2010, Americal seeks a declaratory judgment that it has not breached the license agreement and that it is entitled to continue to use the TheraPeds and MediPeds® trademarks and to

5

manufacture[2] and sell these products in accordance with the license agreement. [Id., at 12]. Americal thus seeks an injunction prohibiting ILG from threatening or prosecuting a trademark infringement action against it and preventing ILG from using the TheraPeds and MediPeds® marks until the dispute is resolved. [Id., at 12-13]. Americal's third cause of action is for breach of contract because ILG allegedly breached the license agreement and failed to approve MediPeds® products, packaging and marketing. [Id., at 13-14]. ILG was served with the Summons and Complaint on March 22, 2010. [Doc. 4].

On March 29, 2010, ILG moved to dismiss this action for lack of subject matter jurisdiction. [Doc. 5]. Prior to filing that motion, however, ILG sued Americal on March 22, 2010 in the North Carolina Superior Court for Vance County. [Doc. 12, at 4; Doc. 12-2]. In the state court complaint, ILG referred to the trademarks as "brands" and did not identify them as federally registered trademarks. [Doc. 12-2]. In that complaint, ILG alleged claims for declaratory judgment and breach of contract. [Id.]. Americal removed the case from state court to the United States District Court for the Eastern District of North Carolina arguing that federal question jurisdiction pursuant to the Lanham Act

---

[2] By the word "manufacture," Americal means that it sources the manufacture of the product as well as performing its own manufacture thereof.

6

existed. [Doc 12-3]. On September 8, 2010, the District Court in the Eastern District granted ILG's motion to remand the matter to state court. International Legware Group, Inc. v. Americal Corp., 2010 WL 3603784 (E.D.N.C. 2010). Considering the allegations of ILG's state court complaint, removed to federal court, the Court held:

> ILG seeks a declaratory judgment under N.C.Gen.Stat. §1-253 that Americal breached the license agreement and that the license agreement is terminated. If ILG were to bring a claim for damages based on Americal's alleged breach of the license agreement, such a claim would not present a federal issue. Accordingly, ILG's request for declaratory judgment does not confer federal-question jurisdiction.
>
> ILG also alleges two breach-of-contract claims and, as in its request for declaratory judgment, relies exclusively upon state law. Federal law did not create the breach-of-contract causes of action, and ILG's state-law claims do not require the resolution of an "actually disputed and substantial" federal issue. As such, ILG's well-pleaded amended complaint presents no federal questions.

Id., at **2-3. The District Court remanded ILG's action to state court. Id.

The parties agreed that any discovery conducted in the state court action could be used in this lawsuit and they proceeded to take depositions. [Doc. 21-3, at 2]. During a deposition taken on January 19, 2011, James Williams, Chief Executive Officer of ILG, testified that the license agreement

had been cancelled. [Doc. 21-4, at 3, 5].[3] He also testified that ILG has refused to approve any requests from Americal for product, brochures, advertising and information booklets because the license agreement has been terminated. [Id., at 6]. Williams admitted that memoranda had been sent to Americal sources in which it was stated that notification would be sent to United States Customs and Border Protection authorities advising them to confiscate product shipped by or on behalf of Americal. [Id., at 10]. Williams further testified that if that notification to confiscate had not yet been done, it would be done promptly. [Id., at 11].

In January 2011, one of Americal's suppliers, Interloop, received a notification which contained the following:

> ILG has been forced to initiate the following actions: ILG has cancelled the licensing agreement with Americal;
>
> ...
>
> Notification to U.S. Customs and Border Protection and ports of entry that ILG considers the importation of Medi-Peds® products to Americal to be counterfeit product and that product should be

---

[3]This information, and that which follows, was provided in connection with a motion for a preliminary injunction filed on February 18, 2011. [Doc. 20]. It thus was not before the Magistrate Judge at the time of his recommendation. The record having been supplemented with this evidence, the Court will include it for purposes of considering the issue of subject matter jurisdiction. The Piney Run Preservation Ass'n v. The County Com'rs of Carroll County, Md., 523 F.3d 453, 459 (4th Cir. 2008), citing Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). "When presented with a Rule 12(b)(1) motion, district courts are permitted to consider materials outside the pleadings and the [Plaintiffs] presented such materials in this case." Piney Run, supra., at n.6

8

> confiscated immediately.
>
> As a supplier of Medi-Peds® products, you should understand that producing Medi-Peds® product for Americal is now unlawful and should be curtailed immediately.

[Doc. 21-3, at 3-4]. Plaintiff has now filed a Motion for Preliminary Injunction wherein it seeks for the Court to enjoin ILG from interfering with suppliers in this manner and acting through customs officials based on an assertion that Plaintiff has no right to use the MediPeds® marks. [Doc. 20].

## STANDARD OF REVIEW

A district court reviews specific objections to a Memorandum and Recommendation under a *de novo* standard. 28 U.S.C. §636(b). "Parties filing objections must specifically identify those findings objected to." Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir.1987), *overruled on other grounds* Douglass v. United Ervs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996). If a party makes only general objections, *de novo* review is not required. Wells v. Shriners Hospital, 109 F.3d 198, 200 (4th Cir. 1997)(boilerplate objections will not avoid the consequences of failing to object altogether). "Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review

9

only *those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007), *certiorari denied* 551 U.S. 1157, 127 S.Ct. 3032, 168 L.Ed.2d 749 (2007) (emphasis in original). Likewise, merely reiterating the same arguments made in the pleading submitted to the Magistrate Judge does not warrant *de novo* review. Id.; Veney v. Astrue, 539 F.Supp.2d 841, 846 (W.D.Va. 2008). "Allowing a litigant to obtain *de novo* review of her entire case by merely reformatting an earlier brief as an objection 'mak[es] the initial reference to the magistrate useless.'" Id. Here, the Defendant has done both: it has "reiterate[d] and incorporate[d] by reference the arguments and facts addressed in [its] memoranda and exhibits in support of its motion to dismiss for lack of subject matter jurisdiction, as well as the arguments and exhibits presented in [it's] reply[.]" [Doc. 14, at 5]. However, in order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Midgette, 478 F.3d at 622. Thus, to the extent that the Defendant has attempted to bootstrap all of its previously filed pleadings and argument, *de novo* review is rejected.

Moreover, where a party asserts claims in the objections which were not

asserted in support of or in opposition to the motion, *de novo* review is not warranted. Price v. Dixon, 961 F.Supp. 894 (E.D.N.C. 1997)(claims cannot be raised for the first time in objections to a memorandum and recommendation). Here, the Defendant has submitted an exhibit in support of its objections which was not presented to the Magistrate Judge. [Doc. 16-3]. The document has not been considered by the Court.

A motion pursuant to Rule 12(b)(1) challenges the court's jurisdiction over the subject matter of the plaintiff's complaint. Richmond, Fredericksburg & Potomac R.Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991), *certiorari denied* 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992). The Plaintiff has the burden of proving that subject matter jurisdiction exists. The Piney Run Preservation Ass'n v. The County Com'rs of Carroll County, Md., 523 F.3d 453, 459 (4th Cir. 2008), *certiorari denied* 129 S.Ct. 258, 172 L.Ed.2d 146 (2008), *citing* Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). "When presented with a Rule 12(b)(1) motion, district courts are permitted to consider materials outside the pleadings and the [parties] presented such materials in this case." Piney Run, supra., at n.6, *citing* Suter v. United States, 441 F.3d 306, 310 (4th Cir. 2006), *certiorari denied* 549 U.S. 887, 127 S.Ct. 273, 166 L.Ed.2d 152 (2006). A motion to dismiss for lack of subject matter jurisdiction should be granted "'only if the material jurisdictional facts

11

are not in dispute and the moving party is entitled to prevail as a matter of law.'" Evans, 166 F.3d at 647, *quoting* Richmond, Fredericksburg & Potomac R.Co., 945 F.2d at 768.

## DISCUSSION

The Magistrate Judge found that the Complaint presents allegations that pertain to a trademark claim ILG has against Americal that arises under federal law, and thus federal question jurisdiction is present in this case. ILG argues that the recommendation is in error because there is no issue of federal law involved in this case, only a state law question of whether Americal breached the contract. The disposition of that issue would resolve any question of who is entitled to use the marks.

> Section 1331 of Title 28 provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." This statutory provision sets forth what is commonly known as federal question jurisdiction. "[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." The well-pleaded complaint rule requires that federal question jurisdiction not exist unless a federal question appears on the face of a plaintiff's properly pleaded complaint. The well-pleaded complaint rule operates no differently when the jurisdictional issue is whether a district court possesses subject matter jurisdiction of a declaratory judgment action purporting to raise a federal question. One does need to understand, however, that in a declaratory judgment action, the federal right litigated may belong to the declaratory judgment defendant rather than the declaratory

12

judgment plaintiff. Thus, ... *the proper jurisdictional question is whether the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff. If the answer to this question is yes, federal question jurisdiction exists.*

Columbia Gas Transmission Corp. v. Drain, 237 F.3d 366, 369-70 (4th Cir. 2001) (citations omitted)(emphasis added).

Overlooking the issue of whether the Complaint presents a federal claim that ILG could bring against Americal, ILG argues that the dispute between the parties is governed solely by the terms of the contract, that is, the license agreement, not the Lanham Act.[4]  In so arguing, ILG apparently urges this Court to adopt the view of other Circuits as to how to analyze the breadth of federal question jurisdiction, see e.g., Dunlap v. G&L Holding Group, Inc., 381 F.3d 21 (11th Cir. 2004). This Court, however, is bound by the Fourth Circuit's view, as set out in Columbia Gas. Nonetheless, ILG interprets the Complaint as follows:

> *Americal seeks to enjoin ILG from threatening a trademark infringement or producing trademarked products* "unless or until this Court determines that ILG has the right to terminate the License Agreement and has properly terminated the License Agreement." Americal is effectively asking the Court to defer any Lanham Act decisions and instead rule on whether the contract

---

[4]In so doing, ILG claims the Magistrate Judge improperly relied on MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007). The Magistrate Judge relied on that case only for the holding that there is a definite dispute of sufficient immediacy and reality to warrant declaratory relief for either party. [Doc. 13, at 14]. ILG has conceded this point in its objections. [Doc. 14, at 11].

13

has been terminated.

[Doc. 14, at 10] (emphasis provided). Despite the implicit acknowledgment that there are Lanham Act issues in this suit, ILG states the only issue is whether it has "properly terminated" the contract. According to ILG, Americal should have sought a ruling as to whether use of the marks would constitute infringement, whether the marks are valid and/or whether using the marks creates a likelihood of confusion. [Id.]. Because Americal placed none of these in issue, ILG claims this case involves nothing more than a breach of contract.

> Contrary to ILG's claims, the allegations of the Complaint actually read:
>
> Americal will suffer irreparable injury if ILG prosecutes a *trademark infringement claim* against Americal pursuant to either *15 U.S.C. §1114 or 15 U.S.C. §1125* [the Lanham Act] and/or attempts to prohibit Americal from continuing to *use the TheraPeds and MediPeds® marks* in the manufacture and marketing of the products pursuant to the License Agreement, and/or attempts to recover damages from Americal for the *use of the marks* after March 31, 2010.
>
> Furthermore, Americal will suffer irreparable damage if ILG begins to manufacture products *using the TheraPeds or MediPeds® marks* on or after April 1, 2010, in that such manufacture will be in breach of Americal's contractual rights to the *exclusive use of the marks* pursuant to the License Agreement, and such manufacturing and sale by ILG is *likely to cause confusion, mistake or deception as to origin of the TheraPeds and MediPeds® products*.

[Doc. 1, at 13] (emphasis provided). Americal thus seeks an injunction

14

prohibiting ILG from threatening or prosecuting a trademark infringement action against it, preventing ILG from using the TheraPeds and MediPeds® marks until the dispute is resolved, and thus, preventing the likelihood of confusion. [Id.]. Indeed, ILG's conduct during the litigation has proven American's concerns are aptly noted. ILG has notified American's suppliers that they are prohibited from producing Medi-Peds® products. It has threatened to notify Customs and Border authorities to confiscate the suppliers' products which it has deemed to be "counterfeit." Most telling, the CEO of ILG has stated under oath that he intends to follow through with that threat. These are all issues which "fall[ ] within the ambit of the Lanham Act." Volvo Trademark Holding Aktiebolaget v. AIS Const. Equipment Corp., 162 F.Supp.2d 465, 470-71 (W.D.N.C. 2001) (collecting cases). It is undisputed that federal question jurisdiction lies for actions arising pursuant to the Lanham Act. 15 U.S.C. §1121(a).

> [N]ot all trademark cases involving a contract issue devolve into common law claims depriving the court of federal question jurisdiction. "As long as the complaint asks for a remedy expressly provided by the [Lanham] Act, the suit fits squarely" into federal question jurisdiction. "If the owner of a federal trademark registration who is a licensor alleges that the licensee has merely breached the license, there is no federal jurisdiction. *But if the licensor also alleges infringement by the licensee on the ground that the license has already been terminated, then there is federal jurisdiction*."

Volvo Trademark, 162 F.Supp.2d at 471 (citations omitted)(emphasis added).

15

In this case, ILG has asserted that the license has been terminated and has accused Americal's suppliers of producing "counterfeit" goods; in other words ILG claims infringement of its trademarks. Therefore, federal jurisdiction exists. "[T]he Declaratory Judgment Act permits a party 'to bootstrap its way into federal court by bringing a federal suit that corresponds to one the opposing party *might* have brought.'" Morgan County War Memorial Hosp. *ex rel.* Bd. of Directors of War Memorial Hosp. v. Baker, 314 Fed.Appx, 529, 533 (4th Cir. 2008) (emphasis in original). That is precisely the case at hand: Americal has brought a federal suit corresponding to one that ILG might have begun, claiming the trademark infringement that it asserts in its correspondence with Americal's suppliers and customs officials. The Court rejects ILG's repeated arguments that this is merely a breach of contract claim and finds the Magistrate Judge's recommendation should be adopted.[5]

The Defendant's final objection is to the Magistrate Judge's recommendation "that the District Court exercise its discretionary jurisdiction to hear" this case. [Doc. 14, at 15]. "Because, ... Americal's claims do not arise under federal law, the Court does not have discretion to simply assert jurisdiction." [Id.]. Contrary to the Defendant's comment, the Magistrate Judge

---

[5]Although ILG cast its objections as five separate objections, four of them simply repeat the argument that this is a state law breach of contract claim.

did not recommend that this Court exercise "discretionary jurisdiction" to hear the case. ILG argued before the Magistrate Judge that in view of the pending state court case between the parties, this Court should exercise its discretion <u>not</u> to entertain this action because it is indicative of forum shopping. That is, although subject matter jurisdiction exists, ILG asked that this federal court defer to the pending state court action. The Magistrate Judge rejected that claim and recommended that this Court, while imbued with discretionary authority to decline to entertain the declaratory judgment action, it should nonetheless hear the matter. [Doc. 12]. The Magistrate Judge did not hold that a federal court has the discretion to assert jurisdiction in the absence of diversity or federal question jurisdiction.

The power of federal courts pursuant to the Declaratory Judgment Act to declare the rights and legal obligations of parties has "consistently been considered discretionary." <u>Centennial Life Ins. Co. v. Poston</u>, 88 F.3d 255, 256 (4th Cir. 1996). When a related state court proceeding is pending, a federal court may consider the following factors in determining whether to abstain from exercising jurisdiction over state law claims:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state

17

systems, because of the presence of "overlapping issues of fact or law"[; and (iv)] whether the declaratory judgment action is being used merely as a device for "procedural fencing"-that is, "to provide another forum in a race for *res judicata*" or "to achiev[e] a federal hearing in a case otherwise not removable."

Id., at 257 (citations omitted); *accord*, United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998).

The Magistrate Judge acknowledged that ILG's state court action involves contract law but noted that this action is likely ultimately to involve claims of trademark infringement. He also noted that the state court action is not likely to resolve immediately. ILG objects to these comments, arguing that North Carolina has a greater interest in its contract cases and is no more likely to delay the case than the federal court. Again, ILG completely ignores the Lanham Act aspect of this litigation and overlooks the fact that the contract law issues are not complicated. Riley v. Dozier Internet Law, PC, 371 Fed.Appx. 399, 402-03 (4th Cir. 2010) (noting case dealt with state-registered trademarks not federally registered marks); Myles Lumber Co. v. CNA Financial Corp., 233 F.3d 821, 824 (4th Cir. 2000) (piecemeal litigation should be avoided and interest of state in deciding matter of state law is lessened when the issue is not problematic or difficult). ILG also completely ignores the fact that the state court action was filed *in response to* (and thus subsequent to) Americal's filing of the present suit. As such, it is questionable whether the

18

state court has jurisdiction to entertain that suit so long as the present action is pending. It would appear to be subject to abatement under North Carolina law because this case is the prior pending action. Eways v. Governor's Island, 326 N.C. 552, 558, 391 S.E.2d 182 (1990) (when prior federal court action pending within North Carolina between same parties with same issues as subsequent state court action, state action subject to plea in abatement); *accord*, Signalife, Inc. v. Rubbermaid, Inc., 193 N.C.App. 442, 667 S.E.2d 499 (2008). Since the issue is whether the controversy "can better be settled in the proceeding pending in the state court" and the state court action is subject to abatement, this factor tips in favor of retaining the action. Wilton v. Seven Falls Co., 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

Finally ILG claims the Magistrate Judge relied too heavily on the fact that the federal action was the first filed as showing that American was not forum shopping. The opposite, it claims, is actually the case. "As a general rule, [however,] 'the first suit should have priority, absent the showing of a balance of convenience in favor of the second action.'" Riley, 371 Fed.Appx. at 403, *quoting* Ellicott Mach. Corp. v. Modern Welding Co., 502 F.2d 178, 180 n.2 (4th Cir. 1974). As for the allegation of forum shopping, procedural fencing occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first

19

in a more favorable forum." Great Am. Ins. Co. v. Gross, 468 F.3d 199, 212 (4th Cir. 2006). In this case, it would appear that ILG raced to state court for that very reason.

In conclusion, the Court has considered the Defendant's objections and has conducted a *de novo* review of the specific, articulated objections. The Court rejects the objections and adopts the Magistrate Judge's recommendations.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Defendant International Legwear Group, Inc.'s Motion to Dismiss American's Complaint for Lack of Subject Matter Jurisdiction [Doc. 5] is hereby **DENIED**.

**IT IS FURTHER ORDERED** that on or before fifteen (15) days from entry of this Order, the parties shall advise the Court of the status of the pending state court action.

Signed: March 4, 2011

Martin Reidinger
United States District Judge